```
UNITED STATES DISTRICT COURT                        USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                       DOCUMENT
------------------------------------------------X   ELECTRONICALLY FILED
DALIA GENGER,                                   :   DOC #: _____
                        Plaintiff,              :   DATE FILED: July 27, 2018
                                                :
            v.                                  :
                                                :
SAGI GENGER,                                    :   17-cv-8181 (KBF)
            Defendant/Third-Party               :
            Plaintiff,                          :   OPINION & ORDER
                                                :
            v.                                  :
                                                :
ORLY GENGER,                                    :
            Third-Party Defendant.              :
------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Once again before the Court is the seemingly never-ending saga of the Genger family.[1] Joining the fray for the first time is Dalia Genger, the family matriarch. The other two parties—siblings Sagi and Orly Genger—are frequent fliers. The present dispute, like those that came before it, stems from the contentious divorce of Dalia and Arie Genger, Sagi and Orly's parents.

All three parties have filed dispositive motions—Dalia moved for summary judgment against Sagi, Sagi moved for summary judgment against Orly, and Orly moved to dismiss the third-party complaint. Those motions are now fully briefed. Though at first glance the issues raised appear complex, the Court's resolution of this action is not; many if not all of the relevant questions have been decided in prior proceedings.

---

[1] For the sake of clarity, in this Opinion & Order the Court will refer to the members of the Genger family by their given names.

For the reasons stated below, the Court hereby DENIES Orly's motion to dismiss, GRANTS Dalia's motion for summary judgment, and GRANTS Sagi's motion for summary judgment.

I. BACKGROUND

What follows is a brief recitation of the facts[2] most relevant to resolution of the outstanding motions. The facts are undisputed unless otherwise noted.

A. <u>Factual Background</u>

1. <u>Divorce and Integrated Agreement</u>

In 2004, Arie and Dalia Genger divorced. As part of the divorce, Dalia agreed to convey her marital rights to 794.40 shares of Trans-Resources, Inc. ("TRI") to trusts benefiting Sagi and Orly. In exchange, Sagi and Orly committed to financially support Dalia. This arrangement was effectuated via three separate agreements:

- First, Dalia and Arie signed a stipulation of settlement finalizing the terms of their divorce settlement (the "2004 Divorce Stipulation"), which was fully executed on October 30, 2004.

- Second, Sagi and Dalia signed a letter dated October 30, 2004 (the "2004 Promise") pursuant to which Sagi agreed to pay Dalia up to the value of the TRI stock she conveyed to the two trusts, upon Dalia's

---

[2] The following facts are derived from: (1) the Local Civ. R. 56.1 statements submitted by the parties in connection with the two motions for summary judgment (ECF Nos. 73, 75, 92, 94); (2) supporting materials submitted by the parties in connection with their motions; and (3) public records of the parties' prior judicial proceedings, including those in this Court. The Court primarily recites facts relevant to the claims and defenses currently at issue, but also includes some facts that, while not directly material to the present dispute, are nonetheless important to understanding the context of this litigation.

2

demand. The 2004 Promise further specifies that Dalia has "sole and absolute discretion" to demand funds under the agreement.

- Third, Sagi and Orly signed a letter dated November 10, 2004 (the "2004 Indemnity") pursuant to which Orly agreed to indemnify Sagi "for and against one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations . . . , including [Sagi's] reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]."

In a prior proceeding in this Court, it was determined that Orly was vacationing in Fiji at the time the 2004 Promise was signed, and therefore could not contemporaneously sign the document. See Genger v. Genger, 76 F. Supp. 3d 488, 493 (S.D.N.Y. 2015) ("Genger I"). However, before Sagi signed the 2004 Promise, Orly verbally agreed to indemnify Sagi for one-half of the payments he would have to make under the 2004 Promise. Id. As such, and for the reasons set forth in the Court's Opinion & Order dated January 5, 2015, the Court held that the 2004 Promise and 2004 Indemnity constituted a single integrated agreement, noting "neither agreement makes any sense without the promises expressed in the other." See id. at 497. The Second Circuit subsequently affirmed that decision. See Genger v. Genger, 663 F. App'x 44 (2d Cir. 2016) ("Genger II"). Accordingly, the 2004 Promise and 2004 Indemnity will be referred to collectively as the "2004 Integrated Agreement" for purposes of this Opinion & Order.

3

2. The 2014 Demand and Lawsuit

On or about January 22, 2014, Dalia demanded $200,000 from Sagi under the 2004 Promise (the "2014 Demand"), which Sagi paid. Sagi subsequently informed Orly of Dalia's demand, and on February 17, 2014 formally demanded payment of $100,000 pursuant to the 2004 Indemnity. Orly refused to pay, and Sagi filed suit in this Court the very next day (the "2014 Lawsuit").

The Court resolved the 2014 Lawsuit by Opinion & Order dated January 5, 2015. See generally Genger I. As previously noted, the Court held that the 2004 Promise and 2004 Indemnity constituted a single integrated agreement (the "2004 Integrated Agreement"), and that the 2004 Integrated Agreement was valid and enforceable. The Court further found that Sagi had monetized his beneficial interest in the TRI shares for $37.0 million, and that Orly had monetized her beneficial interest for $32.3 million, a substantial portion of each attributable to Dalia's conveyed marital interest. Id. at 493-94. Finally, the Court held that Orly was liable for breach of contract as a result of her failure to pay Sagi $100,000 (representing one-half of Sagi's payment to Dalia). Id. at 502.

Orly appealed, and on September 29, 2016, the United States Court of Appeals for the Second Circuit (the "Second Circuit") issued an Opinion affirming this Court's decision in full. See generally Genger II. The Second Circuit explicitly held that "the [2004 Promise] and the [2004 Indemnity] form an integrated agreement in which Orly has a contractual duty to reimburse Sagi for half of the

amount he pays Dalia for living expenses." Id. at *48. The Second Circuit further held that because the 2004 Promise gave Dalia "sole and absolute discretion" to demand funds up to the value of the TRI stock she conveyed, there was "no merit" to the argument that Sagi or Orly could avoid payment by "challenging Dalia's need for the money she demanded." Id. at *50.

3. The 2017 Demand and Procedural History

On October 21, 2017, Dalia demanded $6,000,000 from Sagi under the 2004 Promise (the "2017 Demand"). Unlike the 2014 Demand, however, Sagi refused to pay. As a result, Dalia commenced the instant breach of contract action against Sagi three days later, on October 24, 2017. (See generally Compl., ECF No. 1.) Dalia subsequently filed an Amended Complaint on March 23, 2018. (See Amend. Compl., ECF No. 58.)

In answering the operative complaint, Sagi conceded that the 2004 Promise was valid and enforceable, but argued "the payment obligation was a joint obligation of his with Orly, who has recently indicated she will not honor that obligation, and thus it would be inequitable for Sagi to once again make a payment to Dalia without Orly's immediate reimbursement." (See Answ. to Amend. Compl. and First. Amend. Third-Party Compl. ("Third-Party Compl.") ¶ 10, ECF No. 59.) Accordingly, Sagi brought a third-party complaint against Orly for breach of the 2004 Indemnity. (Id. at 3-8.)

B. <u>Orly's Motion to Dismiss</u>

On May 16, 2018, Orly filed a motion to dismiss Sagi's third-party complaint. (ECF No. 64.) Orly argues that because she is a United States citizen domiciled in Israel, she is a non-diverse party and the Court lacks subject-matter jurisdiction. (<u>See</u> Mem. of Law in Support of Mot. to Dismiss ("Orly MTD Mem.") at 4-6.) Orly further argues, in sum, that the Court lacks supplemental jurisdiction over the third-party claims because there is no actual legal controversy between Dalia and Sagi, and therefore she is properly considered a defendant in this action (not a third-party defendant). (<u>Id.</u> at 7-9.)

Sagi opposed Orly's motion to dismiss as part of his omnibus memorandum dated May 30, 2018. (<u>See</u> Sagi Mem. at 5-17.)[3] Sagi argues that Orly's domicile is irrelevant with regards to the primary action, and that the Court has supplemental jurisdiction over the third-party claims pursuant to 28 U.S.C. § 1367(a). (<u>Id.</u> at 6-9.) With respect to Orly's argument that the parties should be "realigned," Sagi argues that there is a bona fide controversy between himself and Dalia as a result of his refusal to pay. (<u>Id.</u> at 7-8.) Sagi further denies that there was any collusion between himself and Dalia. Orly replied on June 6, 2018, reiterating many of the same arguments she had previously made. (ECF No. 86.)

On June 4, 2018, the Court solicited further briefing from the parties regarding Orly's argument that the parties should be realigned, with a specific focus

---

[3] For purposes of this Opinion & Order, "Sagi Mem." refers to Sagi's omnibus "Memorandum of Law in Opposition to Orly Genger's Motion to Dismiss and Dalia Genger's Motion for Partial Summary Judgment and in Support of His Cross-Motion for Partial Summary Judgment," filed at ECF No. 76.

6

on "[t]he scope of a district court's power to realign parties" and "the nature and application of the 'collision of interests' test in the Second Circuit." (ECF No. 83.) In doing so, the Court noted "if Orly's argument is correct, the result would be full dismissal of this action . . . for lack of subject matter jurisdiction." (Id.) All three parties to this action subsequently filed supplemental briefs addressing those questions on June 22, 2018. (ECF Nos. 97, 98, 99.)

  C. <u>Motions for Summary Judgment</u>

Subsequent to Orly's motion to dismiss, both Dalia and Sagi filed motions for partial summary judgment. Those motions (and corresponding responses) are briefly summarized below:

- On May 22, 2018, Dalia moved for partial summary judgment on her breach of contract claim against Sagi, arguing that because this Court previously held the 2004 Promise to be valid and enforceable, there is no triable issue as to whether Sagi is required to pay Dalia's demand in full. (See Mem. of Law in Supp. of Mot. for Summ. J. ("Dalia SJ Mem."), ECF No. 72.) Sagi responded as part of his of his omnibus memorandum dated May 30, 2018, but did not raise any substantive arguments <u>on his own behalf</u> in opposition to Dalia's motion. (See Sagi Mem. at 17.) Sagi did, however, note that he was refusing to pay "[g]iven Orly's prior insistence that she be afforded an opportunity to defend any claim by Dalia." (See id. at 3.) Dalia replied on June 5, 2018.

7

- On May 30, 2018, as part of an omnibus memorandum opposing the other dispositive motions in this case, Sagi moved for partial summary against Orly. (See Sagi Mem. at 17-19.) Sagi argues, in sum, that there are no triable issues of material fact, and that Orly is required to indemnify him in the amount of $3,000,000 pursuant to the 2004 Indemnity. (Id.) Sagi further argues that it doesn't matter that he hasn't paid Dalia's demand, because the 2004 Indemnity calls for indemnification of all "claims." (Id. at 19.) Orly opposed Sagi's motion on June 13, 2018, arguing that further discovery is necessary pursuant to Fed. R. Civ. P. 56(d). (See Mem. of Law in Opp'n to Sagi Genger's Mot. for Partial Summ J. ("Orly SJ Opp'n") at 9-12, ECF No. 89.) Specifically, Orly argues that the following potential issues require further discovery: (1) whether Orly's obligation to Sagi is "capped" by virtue of the 2004 Promise; (2) whether the money demanded by Dalia is necessary to support her lifestyle; and (3) whether Dalia and Sagi violated the implied duty of good faith and fair dealing. (Id. at 9.) Orly further argued that Sagi is not entitled to summary judgment because he has not yet paid Dalia's demand. (Id. at 13-14.) Sagi replied on June 20, 2018. (ECF No. 93.)

Both motions for summary judgment are now fully briefed.

## II. LEGAL PRINCIPLES

### A. Summary Judgment Standard

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Only disputes relating to material facts—"facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Id. at 248; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

In reviewing a motion for summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

B. Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332, federal courts may exercise "diversity jurisdiction" over civil actions between citizens of different States, between U.S. citizens and foreign citizens, and by foreign states against U.S. citizens when the matter in controversy exceeds $75,000. See 28 U.S.C. § 1332(a). Courts have consistently interpreted § 1332 as requiring complete diversity; that is, "[i]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) (citations omitted).

For purposes of diversity jurisdiction, "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990); accord Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001). Indeed, "the language of § 1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity." Cresswell, 922 F.2d at 68. Even if one

10

party is a foreign citizen, the presence of another party who is a U.S. Citizen domiciled abroad prohibits maintenance of the action on the basis of diversity. Id. at 68-69.

That being said, a federal court may, in certain circumstances, exercise supplemental jurisdiction over non-diverse third-party claims. See 28 U.S.C. § 1367(a). The court may do so when such third-party claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 726-27 (2d Cir. 2000). Section 1367(b) prevents plaintiffs from bringing third-party claims against non-diverse parties, but not defendants. See 28 U.S.C. § 1367(b). This reflects "Congress' intent to prevent original plaintiffs—but not defendants or third parties—from circumventing the requirements of diversity." Viacom, 212 F.3d at 726.

C. Realignment of Parties

In Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941), the Supreme Court held that "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants." In other words, the parties themselves may not manufacture diversity jurisdiction by manipulating the pleadings. To protect against such occurrences, the Court must "look beyond the pleadings and arrange the parties according to their sides in the dispute." Id. (internal quotation omitted); see also Maryland Cas. Co. v. W.R. Grace & Co., 23 F.3d 617, 623 (2d Cir. 1993) (holding that "[t]he purpose in realigning

11

parties is to make sure that there is a <u>bona fide</u> controversy between, as the [diversity jurisdiction] statute commands, citizens of different states.")

In determining whether realignment is warranted, the court must inquire as to whether there is a "collision of interests" between the parties as named in the pleadings. <u>See</u> <u>Maryland Cas. Co.</u>, 23 F.3d at 622. Under the so-called "collision of interests" test, the court must satisfy itself that there exists "an actual, substantial controversy" between the parties, and not merely "[h]ypothetical conflicts manufactured by skillful counsel." <u>Id.</u> at 622-23 (citations omitted). Realignment is a "fact-specific inquiry" which requires the court to examine not only the pleadings themselves, but also "the realities of the record." <u>Id.</u> at 623 (quoting <u>Indianapolis</u>, 314 U.S. at 69.)

### D. <u>Breach of Contract</u>

Under New York law, to recover for breach of contract, a plaintiff must prove "(1) the existence of a contract between [plaintiff] and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." <u>Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC</u>, 631 F.3d 42, 52 (2d Cir. 2011) (citation omitted); <u>see also</u> <u>Flomenbaum v. N.Y. Univ.</u>, 71 A.D.3d 80, 91 (N.Y. App. Div. 2009); <u>Clearmont Prop., LLC v. Eisner</u>, 58 A.D.3d 1052, 1055 (N.Y. App. Div. 2009).

III. DISCUSSION

For purposes of this Opinion & Order, the Court addresses each of the three pending motions separately, in the order in which they were filed.

A. Orly's Motion to Dismiss

Orly's motion to dismiss is premised on the argument that, as a U.S. citizen domiciled in Israel, she is a non-diverse party over whom the Court lacks subject-matter jurisdiction. Because the Court concludes, however, that there is an actual controversy between Dalia and Sagi (and therefore no basis to realign the parties), it need not actually resolve the contested question of Orly's domicile.

As previously noted, it is well-established that federal courts may exercise supplemental jurisdiction over non-diverse third-party claims that are "so related to claims in the action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a); see also Viacom Int'l, Inc., 212 F.3d at 726-27. As such, assuming that Orly was properly brought into this action as a third-party, her domicile is effectively irrelevant—since § 1367(a) gives the Court supplemental jurisdiction over Sagi's third-party claims, it makes no difference whether the Court would have original jurisdiction over those same claims.

Orly, however, argues that she was not properly brought into this action as a third-party, and that is the crux of her motion to dismiss. According to Orly, there is no true "collision of interests" between Dalia and Sagi. Instead, Orly alleges that Dalia and Sagi have improperly manipulated the pleadings in an attempt to

13

artificially manufacture supplemental jurisdiction, and that the Court should realign the parties according to their true interest in this action.

The Court understands Orly's argument. It certainly appears, based on the timing of the pleadings and certain similarities in the language used, that there was some coordination between Dalia and Sagi. Furthermore, Sagi has not seriously contested his <u>own</u> legal obligation to pay the 2017 Demand. Indeed, he has conceded that the 2004 Promise is valid and enforceable, and does not appear to contest the amount of Dalia's demand. The only "defense" Sagi has raised is that it would be inequitable for him to pay without immediate reimbursement, and his "opposition" to Dalia's motion for summary judgment is limited to just <u>four sentences</u>. (<u>See</u> Sagi Mem. at 17.) All of these factors suggest that Dalia and Sagi may have more in common than they let on.

Nonetheless, the practical reality is that Sagi has refused to pay. In determining whether parties should be realigned, the relevant inquiry is whether there exists a "bona fide controversy" (or "collision of interests") between the parties as named in the pleadings. See <u>Maryland Cas. Co.</u>, 23 F.3d at 623. Here, Sagi's refusal to perform under the 2004 Promise represents such a controversy. Although Sagi may not have any legal basis to refuse (and although he may be well aware of that), there is simply no indication that Sagi will pay the 2017 Demand absent a Court order requiring him to do so. For that reason alone, there is a justiciable controversy between Dalia and Sagi, and therefore no basis to rearrange the parties.

14

Because the Court concludes that realignment is not warranted, and because the Court has supplemental jurisdiction over Sagi's third-party claims against Orly, the Court hereby DENIES Orly's motion to dismiss at ECF No. 64.

B. <u>Dalia's Motion for Partial Summary Judgment</u>

Dalia has moved for summary judgment against Sagi on her breach of contract claim.[4] Based on the prior rulings of this Court in <u>Genger I</u> (and the Second Circuit's subsequent affirmance in <u>Genger II</u>), is has been conclusively established that: (1) the 2004 Integrated Agreement is valid and enforceable; (2) Sagi and Orly monetized their beneficial interests in the TRI shares for a total of $69.3 million, a substantial portion of which was attributable to Dalia's conveyed marital interest; and (3) pursuant to the 2004 Integrated Agreement, Dalia is entitled to demand payment up to a certain amount[5] in her "sole and absolute discretion." Sagi has not contested any of those facts, and has not made any legal arguments in defense of his own liability besides a vague assertion that it would be "inequitable" for him to pay without immediate indemnification by Orly.

In New York, a breach of contract claim requires: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4)

---

[4] Dalia has not moved for summary judgment on her second cause of action for declaratory judgment. (<u>See</u> Amend. Compl. ¶¶ 17-21.)

[5] Both Dalia and Sagi agree that Dalia's conveyed marital interest of 794.4 shares represents 36% of the total TRI shares that were monetized. Using that figure, the maximum amount payable to Dalia under the 2004 Integrated Agreement is approximately $24.7 million (or 36% of the total $69.3 million value). Orly has not specifically disputed the 36% figure, though she has raised unrelated questions about how the so-called "cap" in the 2004 Integrated Agreement affects her obligations to Sagi. In any event, there has been absolutely no suggestion by <u>any</u> party that Dalia's demand for $6 million <u>exceeds</u> the amount attributable to her conveyed marital interest of 794.4 shares, and indeed the figure cited by Dalia and Sagi is consistent with documents previously submitted to the Court in connection with the 2014 Lawsuit.

15

damages to the plaintiff caused by that breach.  See Diesel Props. S.r.l., 631 F.3d at 52.  Based on the established facts recited above, there is no triable issue as to whether all of the elements of Dalia's breach of contract claim are satisfied.  Accordingly, the Court hereby GRANTS Dalia's motion for partial summary judgment at ECF No. 70.

    C.    <u>Sagi's Motion for Partial Summary Judgment</u>

Sagi has moved for partial summary judgment against Orly on: (1) his breach of contract claim; (2) his promissory estoppel claim; and (3) his declaratory judgment claim to the extent of the $3,000,000 liability sought in this action.[6]  As previously noted, it has already been conclusively established that the 2004 Integrated Agreement is valid and enforceable, and therefore that Orly is required to indemnify Sagi for half of any payments made pursuant to the 2004 Promise.  Indeed, Sagi's third-party claims in this action are nearly identical to the claims he prevailed on in the 2014 Lawsuit, the only difference being the quantum of Dalia's demand (and the fact that Sagi has yet to pay).  The Court has reviewed all of Orly's arguments in opposition to summary judgment, and finds them to be without merit for the reasons below.

First, Orly argues that she is entitled to further discovery under Fed. R. Civ. P. 56(d).  But summary judgment can only be postponed pursuant to Rule 56(d) when further discovery is reasonably expected to create a genuine issue of material

---

[6] Sagi has not moved for summary judgment on his third cause of action to the extent it seeks declaratory judgment in excess of the $3,000,000 sought in this action.  (See Third-Party Compl. ¶¶ 25-28.)

fact. See Hoffmann v. Airquip Heating & Air Conditioning, 480 F. App'x 110, 112 (2d Cir. 2012). Here, there is simply no question as to Orly's liability, and therefore no reasonable likelihood that further discovery will affect the outcome of Sagi's motion. Indeed, Orly's Rule 56(d) affidavit makes clear that she is effectively seeking to relitigate issues already conclusively decided in Genger I. For instance, Orly seeks discovery related to, inter alia, Dalia's assets and financial expenses. (See Decl. of Michael Paul Bowen ("Bowen Decl.") ¶ 7, ECF No. 90.) But the Second Circuit has already explicitly held that there is "no merit" to the argument that Sagi or Orly could avoid payment by challenging Dalia's need for the payment. See Genger II at *50. The other discovery sought by Orly—including records related to Sagi's potential control of certain funds and whether Dalia and Sagi have acted in bad faith—are simply irrelevant. Orly's contractual obligation to indemnify Sagi for payments made under the 2004 Integrated Agreement has nothing to do with the relationship between Dalia and Sagi or any other litigation the parties are currently involved in.

Second, Orly argues that Sagi is not entitled to summary judgment because he has not yet paid Dalia. As an initial matter, that argument is now moot in light of this very Opinion & Order, which grants Dalia's motion for summary judgment against Sagi. Furthermore, Orly's refusal to pay (which does not appear to have been conditioned on Sagi's own refusal) constitutes an anticipatory breach of the 2004 Indemnity. Sagi is entitled to seek relief for that anticipatory breach in the form of a judgment setting the amount of Orly's liability.

Put simply, the plain language of the 2004 Integrated Agreement makes clear that Orly is obligated to indemnify Sagi for half of Dalia's demand, and there is no triable issue of fact with regards to Sagi's three causes of action. Orly did not have any valid defense in the 2014 Lawsuit, and she does not have any valid defense today.

For the reasons set forth in <u>Genger I</u> and reaffirmed in this Opinion & Order, the Court GRANTS Sagi's motion for partial summary judgment at ECF No. 74.

IV. CONCLUSION

For the reasons stated above, the Court hereby:

- DENIES the motion to dismiss at ECF No. 64;
- GRANTS the motion for summary judgment at ECF No. 70; and
- GRANTS the motion for summary judgment at ECF No. 74.

The Clerk of Court is directed to close all open motions. The parties are directed to meet and confer and file a joint letter not later than **Monday, August 13, 2018** setting forth a schedule for resolution of the outstanding claims.

SO ORDERED.

Dated: New York, New York
July 27, 2018

_____
KATHERINE B. FORREST
United States District Judge